UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00651-GNS-CHL

NATIONWIDE GENERAL INSURANCE COMPANY                                    PLAINTIFF

v.

1616 GARDINER LANE, INC.                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Declaratory Judgment (DN 13) and Defendant's Motion for Leave to File Counterclaim (DN 19). The matters are ripe for adjudication. For the reasons discussed below, Plaintiff's motion is **GRANTED**, and Defendant's motion is **DENIED**.

### I.    STATEMENT OF FACTS

Defendant 1616 Gardiner Lane Inc. ("Gardiner") owns and operates a housing complex in Louisville, Kentucky. (Compl. ¶ 8, DN 1). Plaintiff Nationwide General Insurance Company ("Nationwide") issued a policy insuring Gardiner's property for the period of June 16, 2018, to June 16, 2019 (the "Policy"). (Pl.'s Mot. Declaratory J. Ex., 1 at 5, DN 13-2). On November 22, 2019, Gardiner reported a claim to Nationwide for hail damage to roofs on eight of Gardiner's buildings.[1] (Compl. ¶ 8).

---

[1] Gardiner originally listed the date of the hail damage as June 19, 2019, but it was later determined the last hailstorm to pass through Louisville, Kentucky, was April 23, 2019, so the date was amended to reflect Gardiner's claim within the appropriate policy period. (Pl.'s Mot. Declaratory J. 3-4, 4 n.10, DN 13).

The Policy states in relevant part:

A.    COVERAGES
We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.
…
3.    COVERED CAUSES OF LOSS
This Coverage Form insures against direct physical loss unless the loss is:
a.    Excluded in Section B. EXCLUSIONS;
b.    Limited in paragraph A.4 Limitations in this section; or
c.    Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. Property General Conditions.

(Pl.'s Mot. Declaratory J. Ex., at 29).

With respect to "Loss Payment" the Policy provides:

In the event of loss or damage covered by this policy:
a.    At our option, we will either:
(1)    Pay the value of lost or damaged property as described in e. below;
(2)    Pay the cost of repairing or replacing the lost or damaged property;
. . .
(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

(Pl.'s Mot. Declaratory J. Ex. 1, at 55).

For replacement costs, the Policy provides Nationwide will not pay more than:

(ii)    The cost to replace, on the same premises, the lost or damaged property with other property:
    i.    Of comparable material and quality; and
    ii.    Used for the same purpose; or
(iii)    The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

(Pl.'s Mot. Declaratory J. Ex. 1, at 55).

In response to Gardiner's claim, Nationwide hired an inspector, who found there was no hail damage to the property's shingles or soft metal. (Pl.'s Mot. Declaratory J. Ex. 2, at 2, DN 13-3). On December 10, 2019, Nationwide denied coverage based on the inspector's report. (Pl.'s Mot. Declaratory J. Ex. 3, at 1, DN 13-4). Two days later, Gardiner's property manager requested

Nationwide re-inspect the roofs based on a prior inspection provided by Gardiner's roofer, K&P Roofing Siding & Home Improvement, Inc. ("K&P"). (Compl. ¶ 14; *see also* Pl.'s Mot. Declaratory J. Ex. 6, DN 13-7). Nationwide consented and engaged an independent engineering assessment. The assessment showed hail damage to gutters, downspouts, siding, and some metal vents on the Property, but not shingles, as the hail did not have sufficient energy to cause damage to asphalt-based shingles. (Pl.'s Mot. Declaratory J. Ex. 4, at 5, DN 13-5). Accordingly, Nationwide issued a draft for $6,906.10 on April 14, 2020, representing "full payment for the estimated repairs to or replacement of [the] property." (Pl.'s Mot. Declaratory J. Ex. 5, at 1, DN 13-6). Gardiner claimed the replacement cost was $311,785.74, based on K&P's estimate, which included replacing shingles. (Pl.'s Mot. Declaratory J. 4 n.12; Pl.'s Mot. Declaratory J. Ex. 6). Nationwide again denied Gardiner's claim due to the engineer's assessment that hail did not damage the shingles. (Pl.'s Mot. Declaratory J. 4).

On May 18, 2020, Gardiner invoked the appraisal provision of the Policy and selected an appraiser. (Pl.'s Mot. Declaratory J. 4). The appraisal provision states if the parties "disagree on the amount of loss, either may make written demand for an appraisal of the loss. . . . The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire." (Pl.'s Mot. Declaratory J. Ex. 1, at 54). Nationwide consented and also selected an appraiser. On September 2, 2020, Gardiner's appraiser notified the appraiser for Nationwide that he adopted K&P's original estimate for $311,785.74. (Pl.'s Mot. Declaratory J. Ex. 7, at 1-2, DN 13-8). Gardiner's appraiser acknowledged that the two roofs he inspected did not show signs of hail impact to the shingles but explained that Nationwide's estimate for damage to the roof vents omitted the cost of replacing a minimum of three shingles surrounding each vent. (Pl.'s Mot. Declaratory J. Ex. 7, at 1). The appraiser further explained,

"[t]hat being said, matching of the shingles is an issue in the state of Kentucky." (Pl.'s Mot. Declaratory J. Ex. 7, at 1).

Both appraisers were unable to agree on the amount of loss or the appointment of an umpire to resolve the appraisal dispute. Under the Policy, "[t]he two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction." (Pl.'s Mot. Declaratory J. Ex. 1, at 54). Accordingly, on December 4, 2020, Nationwide petitioned the Court for appointment of an umpire, and requested a declaratory judgement determining the scope of coverage under the Policy. (*See* Compl. ¶ 6). Specifically, Nationwide contends that before the umpire can consider each appraisal, the Court must decide the threshold question of "matching", i.e., whether Nationwide must replace and match all undamaged shingles on a roof in the event it is required to replace some shingles associated with repairing the covered loss to the roof vents. (Pl.'s Mot. Declaratory J. 5-6). On April 16, 2021, Gardiner moved for leave to file late counterclaims for breach of contract and violation of the Kentucky Consumer Protection Act, KRS 367.110-.360, and Unfair Claims Settlement Practices Act, KRS 304.12-230. (Def.'s Mot. Leave Countercl. Ex. 1, at 4-7, DN 19-1).

## II.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.[2] *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating

---

[2] "We apply the standard of review applicable for motions for summary judgment, because both parties apply that standard in their pleadings." *Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 3:10-CV-689-CRS, 2012 WL 896105, at *1 (W.D. Ky. Mar. 15, 2012) (citation omitted). "This is consistent with the approach several courts have adopted in construing a party's motion for declaratory judgment as a 'motion for summary judgment on an action for a declaratory judgment.'" *Universal Logistics Sols., Inc. v. Glob. Keg Rental, LLC*, No. 17-CV-10078, 2017 WL 3205849, at *2 (E.D. Mich. July 28, 2017) (citations omitted).

the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### III.     DISCUSSION

#### A.     Nationwide's Motion for Declaratory Judgment

Nationwide maintains Gardiner is demanding it replace "*undamaged* shingles to 'match' replaced shingles and soft metals that are covered under the Policy" which would result in "a windfall that [Gardiner] did not bargain for under the Policy and coverage for which it did not pay a premium." (Pl.'s Reply Mot. Declaratory J. 1, DN 16 (emphasis in original)). Gardiner contends that both Kentucky law and the Policy require Nationwide to match the entire roof with any shingles replaced during repairs to the roof vents. (*See* Def.'s Resp. Pl.'s Mot. Declaratory J. 2-4, DN 15).

1.     *806 KAR 12:095*

In support of its position, Gardiner first references the Kentucky Administrative Regulations governing "[u]nfair claims settlement practices for property and casualty insurance." (Def.'s Resp. Pl.'s Mot. Declaratory J. 2 (citing 806 KAR 12:095)). Specifically, Gardiner cites Section 9, which provides "[i]f a loss requires replacement of items and the replaced items do not reasonably match in quality, color, or size, the insurer shall replace all items in the area so as to conform to a reasonably uniform appearance." 806 KAR 12:095 § 9(1)(b).

Recently this Court held this "regulation cannot be enforced in a private action." *Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, No. 3:14-CV-40-DJH-DW, 2015 WL 5793951, at *4 (W.D. Ky. Sept. 30, 2015); *see also Advanced Mech. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 3:14-CV-388-DJH-CHL, 2017 WL 3381366, at *8 (W.D. Ky. Aug. 4, 2017) ("[T]his Court and its sister district have repeatedly held, [the regulation] is inapplicable in private litigation . . . ." (citation omitted)). As this Court explained in *Woods Apartments, LLC v. U.S. Fire Insurance Co.*, No. 3:11-CV-00041-H, 2013 WL 3929706 (W.D. Ky. July 29, 2013):

> The regulation Plaintiffs cite clearly provides that "[a] violation of this administrative regulation shall be found only by the executive director. This administrative regulation shall not create or imply a private cause of action for violation of this administrative regulation." 806 KAR 12:095 § 2(3). As this Court has found "[t]he plain language of this regulation states that it neither creates nor implies a private cause of action for an alleged violation." *Brantley v. Safeco Ins. Co. of Am.*, 2012 WL 4959528 (W.D. Ky. Oct. 12, 2012); *see also Hiscox Dedicated Corp. Member Ltd. v. Wilson*, 246 F. Supp. 2d 684, 695 (E.D. Ky. 2003) (holding that a claim pursuant to the Kentucky Administrative Regulations is "not legally cognizable according to the language of the regulation"); *Sullivan v. Am. Intern. Group, Inc.*, 2008 WL 4056366, *6 (E.D. Ky. Aug. 27, 2008). Accordingly, Plaintiffs cannot sue under this regulation.

*Id.* at *1. Gardiner attempts to distinguish this line of authority on the basis that each case involved "suits instigated by the insured against the insurance company, alleging violation of the administrative regulation . . . ." (Def.'s Resp. Pl.'s Mot. Declaratory J. 2).

6

*Cincinnati Specialty Underwriters Insurance Co.*, however, was a declaratory judgment action brought by the insurance company to appoint an umpire. *Cincinnati Specialty Underwriters Ins. Co.*, 2015 WL 5793951, at *1. The policyholder brought a counterclaim for the amount of loss sought by its appraiser based on Kentucky's "matching law", but ultimately the parties "filed competing briefs regarding . . . specifically, whether the chosen umpire should be instructed that cosmetic matching of the siding is required . . . ." *Id.* at *1-2. Thus, squarely before the Court was the applicability of this regulation to the insured's policy that, like Gardiner's, required replacements "with other property of like kind and quality". *Id.* at *3. The Court held that Section 9 does not "establish that '[m]atching is required by Kentucky law . . . .'" *Cincinnati Specialty Underwriters Ins. Co.*, 2015 WL 5793951, at *4; *see also Woods Apartments, LLC*, 2013 WL 3929706, at *2 ("The regulation does not support Plaintiffs' argument that Defendants are legally obligated to repair or replace portions of the Property that were not damaged . . .[,] because the regulation imposes no such requirement . . . ."). Gardiner has not proffered any reason for the Court to depart from its prior rulings.

    2.  ***The Policy***

Regarding "matching" under the Policy, Nationwide maintains the provision requiring material be of "like kind and quality" only requires Nationwide utilize items of "comparable quality and appearance" but that nowhere does the Policy require it to "replace or repair undamaged portions of Gardiner's property." (Pl.'s Mot. Declaratory J. 1). Gardiner argues that "some shingles *will* be replaced due to the repair of the direct cause of loss, which may result in a glaring defect in the roof's appearance and devaluation of the property if shingles of like kind and quality (as provided in the policy) are not obtainable" and that "[w]ithin the past ten years, several courts have concluded that matching is required where an insurance policy refers to repairs or

replacement 'of like kind and quality.'"[3]  (Def.'s Resp. Pl.'s Mot. Declaratory J. 3).  Nationwide notes the cases cited by Gardiner hinge upon some ambiguity in the policy, leading the courts to apply the reasonable expectations doctrine.  (Pl.'s Reply Mot. Declaratory J. 2).  Nationwide notes Gardiner has not claimed the Policy here is ambiguous or that it is impossible to replace any shingles with similar material.  (Pl.'s Reply Mot. Declaratory J. 3-4).

This Court need not look to other jurisdictions, however, because as was recently noted, "it has declined to adopt a 'matching' rule obligating insurers to replace undamaged siding or shingles" when faced with similar policy language requiring materials of "like kind and quality." *Advanced Mech. Servs., Inc.*, 2017 WL 3381366, at *8.  Thus, in *Woods Apartments, LLC*, this Court addressed a similar replacement value policy requiring materials be of "like kind and quality", at a cost for "comparable material and quality".  *Woods Apartment, LLC*, 2013 WL 3929706, at *1-2.  This Court found "the Policy [was] clear and unambiguous on its face" and held "[e]ssentially, if [d]efendants can repair the damaged area with comparable or similar material, the Policy provides that they are not obligated to replace undamaged portions." *Id.* at *2.  This Court noted "[p]laintiffs' interpretation, that they are entitled to replacement of the roof and siding of all the apartment buildings to achieve cosmetic matching, would be unduly burdensome on [d]efendants and would essentially result in a windfall to [p]laintiffs." *Id.*

---

[3] Gardiner notes that while some cases have distinguished between "actual cash value" policies and "replacement value" policies, under the Policy here it is entitled to the replacement value of the covered loss.  (Def.'s Resp. Pl.'s Mot. Declaratory J. 3).  In the Complaint, Nationwide contends the settlement amount was based on the "actual cash value" of the damage.  (Compl. ¶ 22; *see also* Compl. ¶ 9).  Throughout its motions, Nationwide does not dispute Gardiner's characterization of its policy as a replacement value policy.  This distinction ultimately appears irrelevant. *Compare Cincinnati Specialty Underwriters Ins. Co.*, 2015 WL 5793951, at *6 (actual cash value), *with Woods Apartment, LLC*, 2013 WL 3929706, at *2 (replacement value).

Accordingly, as Gardiner has "not proffered any evidence of the unavailability of comparable or similar material", the Court will not depart from its precedent. *Id.*; *see also Advanced Mech. Servs., Inc.*, 2017 WL 3381366, at *8 ("Plaintiffs fail . . . to offer any evidence that the siding already provided is inadequate."). The Court holds the Policy does not require matching undamaged shingles with shingles replaced under a covered loss and, therefore, grants Plaintiff's motion.

B. **Gardiner's Motion for Leave to File Counterclaims**

Consistent with the parties' joint status report, the Court issued a Scheduling Order setting the deadline to file motions to amend the pleadings by December 8, 2020. (Joint Status Report, DN 8; Scheduling Order 2, DN 11). On April 16, 2021, Gardiner moved for leave to file a belated counterclaim due to the "pending nature of the petition to appoint an umpire, the potential running of the statute of limitations on its claims, and the maturing of an additional claim . . . ." (Def.'s Mot. Leave Countercl. 1, DN 19).

Gardiner alleges in its proposed counterclaim that, in contrast to later investigations conducted for Nationwide, K&P originally found extensive hail damage and falling object damage to the shingles, and not just soft metals. (Def.'s Mot. Leave Countercl. Ex. 1, ¶¶ 6, 14). Gardiner alleges that while Nationwide's declaratory judgment action was pending, it covered the damage areas of the roofs with tarps to mitigate damages.[4] (Def.'s Mot. Leave Countercl. Ex. 1, ¶ 21). Eventually, Gardiner received a citation due to the presence of the tarps and therefore requested K&P repair the portions of the roof acknowledged as covered by Nationwide, hoping to avoid

---

[4] Gardiner does not explain what "damages" it is referring to but based on the email chain attached to Nationwide's Motion for Declaratory Judgment, it seems Gardiner is referencing a leak to one of its buildings. (*See* Pl.'s Mot. Declaratory J. Ex. 7, at 3). Gardiner's appraiser, however, explained to Nationwide's appraiser that the leak was not part of the appraisal. (Pl.'s Mot. Declaratory J. Ex. 7, at 2).

9

future fines. (Def.'s Mot. Leave Countercl. Ex. 1, ¶¶ 22-23). K&P allegedly explained to Gardiner that to replace the roof vents it is necessary to break metal pieces away from the shingles, which will result in the removal of extensive connected portions of the shingles.[5] (Defs.' Mot. Leave Countercl. Ex. 1, ¶¶ 24-25). Gardiner claims Nationwide has not responded to this additional evidence, nor to its third request for coverage. (Defs.' Mot. Leave Countercl. Ex. 1, ¶ 27). Gardiner further alleges shingles of a similar kind and quality that "will result in an overall uniform appearance of the roofs are unavailable." (Defs.' Mot. Leave Countercl. Ex. 1, ¶ 31).

While Fed. R. Civ. P. 15 instructs the Court to freely "give leave [to amend] when justice so requires," that "window of opportunity does not remain open forever." Fed. R. Civ. P. 15(a)(2); *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). Once a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Fed. R. Civ. P. 16 first. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Scheduling-order modifications are available only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements,' though courts may also consider prejudice to the nonmoving party." *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

If the movant demonstrates "good cause," then the Court must decide whether leave to amend is warranted. "[A] new or different counterclaim pleaded after an amended complaint still requires leave . . . , just as an amended complaint does." *Ceres Protein, LLC v. Thompson Mech.*

---

[5] Gardiner attached an email from K&P to its counterclaim, which was sent to the parties and explained this problem. The email included a link to a YouTube video, which shows K&P demonstrating the effects that removing the surrounding shingles will have on Gardiner's remaining shingles. (*See* Def.'s Mot. Leave Countercl. Ex. 2, DN 19-3).

*& Design*, No. 3:14-CV-00491-TBR-LLK, 2017 WL 1025244, at *2 (W.D. Ky. Mar. 15, 2017). The Court will generally grant leave to amend absent "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)).

Gardiner has not exhibited due diligence in attempting to meet the Scheduling Order's requirements, and therefore, has not shown good cause for modifying the Order under Fed. R. Civ. P. 16.[6] Gardiner ultimately maintains that through the declaratory judgment action, Nationwide mischaracterizes the appraisal process and "seeks to impose an unreasonably strict interpretation of 'amount of loss' which is not followed by a majority of courts and is contrary to the plain meaning of the words." (Def.'s Reply Mot. Leave Countercl. 1, DN 22). Gardiner contends the umpire's job is to ascertain the amount of damage from a covered event, which should include determining whether shingle damage is hail related, and whether shingle replacement and thus matching would result from repairing the roof vents. (Def's. Reply Mot. Leave Countercl. 1-2). The Court need not address Gardiner's contention, however, as any abuse by Nationwide of the appraisal process would have been evidenced by the present dec action, and yet Gardiner failed to act until now.[7]

---

[6] To the extent that Gardiner's claims are related to Nationwide's conduct arising *after* this action was filed, those claims would presumably not be compulsory and could be asserted in a subsequent action. *See Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 517 (Ky. 2006) ("[W]e hold that KRS 304.12-230 applies [to an insurer's conduct] both before and during litigation.").

[7] Ultimately, Gardiner had no basis to believe it could use the Policy's appraisal provision as a means of appealing Nationwide's consecutive denials for shingle damage. Similarly, any dispute about the cost of replacing undamaged shingles associated with repairing the roof vents would seemingly be resolved during the appraisal process, where the umpire would decide, based on each appraisal, the value of the property and amount of loss, considering these cost. Throughout its

Similarly, to the extent Gardiner raises claims based on Nationwide's failure to pay for hail damage to the shingles, Gardiner could have brought the same claims when Nationwide filed its declaratory judgment action seven months ago.  Also, to the extent Gardiner attempts to bring claims arising out of Nationwide's current failure to approve future costs associated with replacing the roof vents, Gardiner essentially already sought this coverage when it submitted K&P's original inspection and estimate.  As discussed above, the estimate included costs for replacing and matching any shingles associated with repairs to the roof vents, even absent damage to the shingles themselves.  Gardiner then consented to the appraisal process, where its appraiser submitted the same amount, with emphasis on the need to replace shingles surrounding the vents.  (Pl.'s Mot. Declaratory J. Ex. 7, at 1).  As Nationwide explained "Gardiner's roofing contractor merely restating in an email in 2021 what its appraiser already said does not make it new information." (Pl.'s Resp. Def.'s Mot. Leave Countercl. 6, DN 20).

Furthermore, any claims based on Nationwide's refusal to cosmetically match potential replacement shingles with Gardiner's current shingles is futile based on the Court's holding above. *See Advanced Mech. Servs., Inc.*, 2017 WL 3381366, at *8 ("Because Plaintiffs cannot demonstrate that Auto-Owners breached the policy, these claims also fail.").  For the reasons discussed above, Gardiner's motion for leave to file a counterclaim will be denied.

---

filings, Nationwide does not seem to contest its obligation to replace surrounding shingles if the umpire included it in the amount of loss.  In fact, the entire premise of Nationwide's declaratory judgment action is whether, *if the umpire finds the shingles must be replaced*, it must also match the surrounding undamaged shingles.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Declaratory Judgement (DN 13) is **GRANTED** and Defendant's Motion for Leave to File Counterclaim (DN 19) is **DENIED**. **IT IS FURTHER ORDERED** that the umpire shall not consider costs associated with matching, as described above, when determining the value of Defendant's loss.

Greg N. Stivers, Chief Judge
United States District Court

June 16, 2021

cc:   counsel of record